### McMURRAY v. WITHERSPOON LIVE-STOCK COMMISSION CO.

No. 18298.　Opinion Filed July 31, 1928.

(Syllabus.)

1. **Evidence—Parol Proof of Transfer of Note Between Corporations.**

In an action on a promissory note, where the plaintiff alleges that said note was transferred to it by the original payee, it is not error to allow the oral testimony of said transfer of one who was president of both the assignor and assignee companies and had personal knowledge of said transfer, even though it may appear that all the assets of the assignor company were transferred and the minutes of the board of directors were made in writing evidencing said transfer; this being an exception to the general rule that the minutes of a corporation are the best evidence.

2. **Corporations—Corporate Existence Admitted Unless Expressly Denied in Answer—Insufficiency of Verified General Denial.**

Under section 5311, C. O. S. 1921, in order to put the existence of a corporation in issue, the answer must expressly aver under oath the nonexistence of said corporation. And where the existence of a corporation is alleged in a petition, a verified general denial is not sufficient to deny the existence of said corporation.

3. **Sales—Waiver of Implied Warranty of Live Stock by Execution of Renewal Note for Purchase Price.**

Where there is no express warranty in the sale of personal property and the buyer has ample opportunity to inspect said property and ascertain the defects, if any, and does inspect said property, or could have by the exercise of reasonable diligence, and thereafterwards executes a renewal note in payment of said personal property and writes letters expressing satisfaction with the property and his intention to pay for the same, he is thereby estopped from afterwards claiming damages for defects in said property, and, where such facts are admitted, it is not error for the court to instruct a verdict in favor of the plaintiff for the full amount of the renewal note.

4. **Continuance—Absent Witnesses — Due Diligence—Discretion of Court.**

Motions for continuances are addressed to the sound discretion of the court, and, where a party seeks a continuance on account of the absence of certain witnesses in another county, it is incumbent upon him to show due diligence to procure said evidence; and the failure to procure the depositions of said witnesses is not excused by their promise to voluntarily appear in person and give testimony at the trial, unless it should appear that the adverse party caused the complaining party to rely upon said promise or is in some way connected with the breach thereof.

5. **Appeal and Error—Judgment Sustained.**

Record examined, and found sufficient to support the verdict of the jury and judgment of the court.

Commissioners' Opinion, Division No. 1.

Error from District Court, Pittsburg County; Harve L. Melton, Judge.

Action by the Witherspoon Livestock Commission Company against J. F. McMurray. Judgment in favor of the plaintiff, from which defendant appeals. Affirmed.

J. S. Arnote, for plaintiff in error.

Fuller, Porter & Fuller, for defendant in error.

FOSTER, C. The parties will be referred to as in the trial court, reverse from which they appear here.

The plaintiff began its action in this case on a promissory note in the sum of $2,552.15, dated November 30, 1918, and due May 5, 1919, on which there was indorsed a payment of $1,659.45, plaintiff asking a judg-

ment for the balance due in the sum of $1,-268.19, with interest and attorney's fees, the petition alleging that the note had originally been made to the Witherspoon-McMullen Livestock Commission Company and later assigned to the plaintiff.

The original answer was a general denial, and an amendment to the answer was later filed in which the defendant acknowledged that he executed the note to the Witherspoon-McMullen Livestock Commission Company, but specifically denied that there was anything due on said note or that the same was now owned by the plaintiff, and set up as a further defense that said note was executed for the payment of certain cattle which the defendant purchased from the plaintiff, and that at the time said cattle were delivered they were in a very bad condition, part of them died immediately and the rest were very poor and emaciated, and that by reason thereof the defendant was damaged in about the same sum as the amount due upon the note, and prays that the plaintiff take nothing. The reply was a general denial.

At the trial, the testimony disclosed that the defendant purchased from the Witherspoon-McMullen Livestock Commission Company two carloads of cattle which were shipped from Fort Worth to Kenefick, Okla., and that in payment of said cattle the defendant executed a note. dated February 5, 1918, in the sum of $2,397, payable to said company, and also executed a mortgage on the cattle so purchased to secure the payment of said note; that said note fell due on August 3, 1918, and a renewal note was executed on November 30, 1918, for the amount hereinabove set out, which is the note sued on in this case; that at the same time the defendant executed a mortgage on the same cattle and in addition thereto included 4 mules in the mortgage to secure said renewal note, which note fell due on May 5, 1919, and on September 19, 1919, a credit of $1,654.45 was applied upon said note, which was the sum derived from the sale of the stock included in the mortgage executed November 30th; that thereafterwards the Witherspoon-McMullen Livestock Commission Company went out of business, and this note, together with all the other assets, was assigned to the plaintiff.

In defense, the defendant admitted the execution of the note, but testified as set out in his petition—that at the time of receiving the cattle some of them were dead, others died immediately thereafter, and still others were in a very poor and emaciated condition, and that the defendant was damaged in a large sum, much in excess of the amount due upon the note.

The trial was had before a jury, and at the close of all the testimony the court instructed the jury to return a verdict for plaintiff for the full amount sued for, from which judgment the defendant prosecutes this appeal.

Many assignments of error are set out in defendant's petition, but they are argued under four propositions, as follows:

(1) That the court erred in admitting evidence of the plaintiff.

(2) That the court erred in not sustaining the demurrer of the defendant to the evidence of the plaintiff.

(3) That the court erred in instructing the jury to return a verdict in favor of the plaintiff and against the defendant.

(4) That the court erred in overruling defendant's motion for a continuance.

Under the first proposition it is contended that, according to the evidence of Frank Witherspoon, testifying for the plaintiff, the note originally given in this case to the Witherspoon-McMullen Livestock Commission Company and assigned to the plaintiff was objectionable, for the reason that the evidence also showed that a transfer was made of all the assets of said company to plaintiff by order of the board of directors of the Witherspoon-McMullen Livestock Commission Company, and that the record of this transfer is the best evidence, and that oral evidence concerning the transfer is not admissible.

In support of this proposition, the defendant cites 14 C. J. 541, section 2460, which provides in substance that there must either be a corporate action formally taken or an assent of all parties interested in order to make valid a transfer of all the corporate property of a corporation. They further rely upon the general rule with reference to corporations and incorporated societies that, where the transactions are directly involved in a litigation and those transactions are in writing, the writing is the best evidence and oral testimony cannot be substituted, and cite in support thereof many decisions from different states of the Union.

As a general proposition, where transactions are in writing, the writing is the best testimony, but there are many exceptions to this rule. In 22 C. J. p. 1011, section 1294,

which is one of the sections relied upon by the defendant and cited in his brief, we find the following:

"Where a record of acts and proceedings of a private corporation is required to be kept, and even where such a record is act-. ually kept, although not required by the law, such record constitutes the best evidence of its contents, and parol evidence is not admissible if the record is acceptable. The foregoing rule, however, is not of unlimited scope, and independent facts of which a witness has personal knowledge may be proved by his testimony, notwithstanding that they may also appear upon the records of the corporation."

It appears from the facts in this case that the witness, Frank Witherspoon, was president of both the Witherspoon-McMullen Livestock Commission Company and the plaintiff, and had personal charge of its business and possession of the note involved in this case and knew personally, independent of what the record might show, that the note had been transferred.

The note in this case was indorsed by the original payee, and was in the possession of the plaintiff.

Under these facts and the rule as above announced, we believe that the testimony, as to the transfer of the note, since the same was not contradicted, was competent and sufficient.

Under the assignment that the court erred in not sustaining the demurrer of the defendant to the evidence of the plaintiff, it is contended that the plaintiff in its petition alleged that it was a corporation and that the defendant in his answer denied the allegations of the petition, which answer was duly verified.

The original answer was a verified general denial. The amended answer was a general denial and then a specific denial of the ownership of the note, and setting up other defenses. The only denial, if any, of the existence of the incorporation was a verified general denial.

In support of this proposition, the defendant cites section 5311, C. O. S. 1921, which is as follows:

"In all civil actions brought by or against a corporation, it shall not be necessary to prove on the trial of the cause the existence of such corporation, unless the defendant shall in his answer expressly aver under oath that the plaintiff or defendant is not a corporation."

Then, in further support of this proposi-

tion, the defendant cites the cases of Western Roofing Tile Co. v. Deibler, 30 Okla. 347, 120 Pac. 579; Bledsoe v. Keystone Steel & Wire Co., 41 Okla. 586, 139 Pac. 257.

From an examination of these cases, we do not believe the same are in point. In the first case above referred to it appears that the answer was not verified, but that the question of the existence of the corporation was put in issue under the court's instruction, which was held as error. In the other case it appears that the defendant filed a specific denial to the plaintiff's corporate character, which was duly verified, and under this specific denial the plaintiff was put on proof as to the existence of the corporation.

In the case at bar, the answer did not expressly allege under oath that the plaintiff was not a corporation as required by our statute above quoted.

In the case of Marshall Mfg. Co. v. Dickerson, 55 Okla. 188, 155 Pac. 224, the court said:

" 'There was no evidence tending to establish the incorporation of the plaintiff.' As we look at the case, no such evidence was necessary under the pleadings. The petition alleges the incorporation of the plaintiff. The only answer to that allegation is in the general denial, which is not sufficient to join an issue thereon. (Citing sec. 5311, Laws of 1921) * * *

"The concise meaning of this section is that, unless the defendant shall in his answer expressly aver * * * under oath that the plaintiff is not a corporation, it shall not be necessary on the trial to prove the existence of such corporation."

It seems clear that, under the holding of the case last above referred to, it was not necessary to prove the existence of the corporation under the pleadings in this case.

It is next contended that the court erred in instructing the jury to return a verdict in favor of the plaintiff.

Under the uncontradicted testimony in this case, the original note was given in February, 1918, and was for the purchase price of cattle bought by the defendant from the plaintiff's assignor; that the cattle were immediately shipped to the defendant and he received them at Kenefick, although he testified that he ordered the cattle shipped to Tishomingo, yet he made no protest at the time the same were shipped to Kenefick and immediately upon their arrival he notified his employees to take possession of the cattle; that he himself inspected the cattle sev-

eral times within 30 days after they were received, and that several times during the latter part of the year 1918 and during the year 1919, he wrote letters to the Witherspoon-McMullen Livestock Commission Company in which he in substance told them that the cattle were in fairly good condition, that the milk cows were extra good, and that he was going to pay the note as soon as possible; that more than six months after receiving the cattle he executed a renewal note on November 30, 1918, for the full amount of the purchase price, including interest, and also executed an additional mortgage in which he included not only the cattle purchased but 4 mules in addition thereto.

In these letters he made no complaint as to the condition of the cattle, although defendant did testify that he believed he had made a report in writing to the plaintiff about the poor condition of the cattle, and that he had an oral conversation with Frank Witherspoon, president of the company, in which he told him the condition of the cattle before extending the renewal note. However, he had no copy of the report which he had sent to the company. The defendant admitted the writing of these letters and the execution of the renewal note and mortgage.

Under this admitted testimony, we believe the court was correct in instructing the jury to return a verdict in favor of the plaintiff.

Many cases are found in Oklahoma supporting the court's finding. We will refer to one of them. In the case of Wright v. Miller, 109 Okla. 47, 234 Pac. 366, the court said:

"All of these defects were known to the defendant or could by the exercise of reasonable diligence have been known, long prior to the maturity of the note for which the renewal note in suit was given. No offer was ever made to return the machinery or any part of it, and no question was raised as to the validity of the $1,000 note at its maturity, but defendant secured an extension of that indebtedness by the payment of one-half of it and the execution of the new note. Under such circumstances this court has consistently held that there is a waiver of the defects now complained of, and that the defendant is estopped from relying upon alleged misrepresentations or breach of implied warranties as against his liability on a note executed with full knowledge, or with opportunity to acquire full knowledge of the defects now claimed to exist, and at a time when he was using and enjoying all of the benefits of the machinery purchased and installed by him. Brown v. Davidson, 42 Okla. 598, 142 Pac. 387; Spaulding v. Howard, 51 Okla. 502, 152 Pac. 106; Simonoff v. Parsons, 52 Okla. 600, 153 Pac. 152; Talley v. Harrison, 60 Okla. 110, 559 Pac. 366; Emerson-Brantingham Implement Co. v. Ware, 71 Okla. 19, 174 Pac. 1066."

It is further contended under this assignment that there was no proof as to the correct amount still due and owing upon the note sued upon. The note showed upon its face a credit of $1,659.45, and in the examination of Frank Witherspoon, president of the plaintiff company, he was asked by plaintiff's attorney to state what was the balance due on this note. This was objected to by the defendant as a mere conclusion of the witness, and sustained by the court for the reason that it was a matter of computation. This, we think, clearly indicates that it was understood by every one that the only payment on the note was the amount indorsed upon the back of same, and, since the defendant did not deny the amount due when placed upon the stand, we are of the opinion that this testimony was amply sufficient to support the amount due, even under a verified denial.

It is next contended that the court erred in overruling defendant's motion for a continuance.

On the day this case was called for trial, the defendant filed an affidavit for a continuance in which he set up that there were two witnesses who would testify to the bad condition of the cattle at the time of their delivery; that one of the cattle was dead, and that several died immediately after delivery; that all the cattle were in a poor and emaciated condition, and that the cattle were delivered at Kenefick instead of Tishomingo, and that it was necessary for the defendant to go to extra expense in caring for the cattle and in buying extra feed; that one of these witnesses lived in Johnston county and one in McClain county, Okla., and that the roads were in bad condition and that it was impossible for these witnesses to reach McAlester; that they had promised the defendant to be present at the trial, and that they had been present at the previous assignment of this case, which was continued on application of the plaintiff.

Before the court ruled upon this motion, the defendant himself was placed upon the witness stand by the plaintiff and testified in substance that he had not seen nor heard

of these witnesses for more than a year; that they lived in the counties designated in the affidavits the last time he heard from them and that they had promised to come and testify; that he had no personal knowledge now that they were still living in those counties, and as a matter of fact whether they were living or dead, and that he had no personal knowledge of the condition of the roads other than what some one had told him.

The court overruled the motion for a continuance, and this is alleged as error.

It is well settled in this state that the ruling on a motion for a continuance will not be disturbed on appeal, unless it appears that there has been an abuse of discretion, as motions for continuance are addressed to the sound discretion of the court.

It has been repeatedly held in this state that, when a case is called for trial and one party seeks a continuance on account of the absence of certain witnesses in another county, the party seeking the continuance must make some effort to procure the testimony of said witnesses by deposition or offer some excuse for his failure to do so; that in showing diligence to procure the evidence, failure to procure the deposition of a witness who is a resident in another county is not excused by his promise to voluntarily appear in person and give his testimony, unless the adverse party has in some wise contributed to cause reliance upon such promise or causes the breach thereof; the adverse party being free from blame. Chortney v. Curry, 99 Okla. 69, 225 Pac. 950; Wood v. French, 39 Okla. 685, 136 Pac. 734; Sherman Machine & Iron Works v. Cole Mfg. Co., 51 Okla. 353, 151 Pac. 1181.

In the case at bar, the defendant admitted that he made no effort to secure the deposition of the witnesses, and the court clearly did not abuse its discretion in refusing a continuance.

It might also be said that the testimony of the absent witnesses, if true, would not, under the other facts and circumstances in this case, have been sufficient to constitute any defense.

The only other assignment relied upon is that the court erred in overruling the motion for a new trial, but there are no new propositions included under this assignment.

We have carefully examined the record in this case and believe the same supports the verdict and judgment of the court. The judgment is affirmed.

Plaintiff has filed a request for judgment on a supersedeas bond. It appears that there is in the record a supersedeas bond, duly approved by the court clerk of Pittsburg county, in which the plaintiff in error, J. F. McMurray, is principal, and Nettie F. McMurray and Tom McMurray are sureties, and that under the rules of this court plaintiff is entitled to a judgment thereon.

It is therefore ordered by this court that the plaintiff have and recover from the defendant, J. F. McMurray, as principal, and Tom McMurray and Nettie F. McMurray, as sureties, the sum of $1,268.19, with interest thereon at 8 per cent. from the 19th day of September, 1923, and attorney's fees in the sum of $126.81, and costs of this action, for which let execution issue.

BENNETT, TEEHEE, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 22 C. J. p. 1012, §1294. (2) 14a C. J. p. 824, §2936. (3) 35 Cyc. p. 433. (4) 13 C. J. p. 149, §59; p. 155, §71; p. 160, §79; p. 165, §87; anno. L. R. A. 1918E, 528; 6 R. C. L. p. 544, 560; 2 R. C. L. Supp. p. 155; 5 R. C. L. Supp. p. 355. (5) 4 C. J. p. 1129, §3122.