**MASON v. ROSE et al.**

No. 26234.    March 10, 1936.

Orlin H. Graves, for plaintiff in error.

Julian B. Fite and Bower Broaddus, for defendants in error.

PER CURIAM. The record on this appeal discloses many facts, only the following of which are deemed material and pertinent to a decision herein:

On March 18, 1920, pursuant to applicable statute, Isaac Mason, as foreign guardian of the person and estate of his minor son, Isaac, Jr., both father and son being residents of the District of Columbia, filed in

the county court of Muskogee county an application for the transfer to him of said minor's personal property then being administered in a local guardianship proceeding in said court. At that time said minor's estate in Oklahoma consisted of certain money, urban realty, an oil-producing farm, notes secured by mortgages and other securities. Upon the denial of said application by the county court, Mason appealed to the district court of said county, and, after an adverse judgment there, appealed to this court. On February 13, 1923, this court announced its decision reversing the judgment of the district court and directing it to order the county court to direct the local guardian to effect the transfer (Mason v. Ford, 90 Okla. 112, 216 P. 129). After two successive petitions for rehearing had been denied, the mandate of this court was spread of record in the district court on July 7, 1923, and on the same day an order of that court duly entered in conformity therewith was transmitted to the county court, whose order in turn directed the local guardian to comply with such mandate.

On April 23, 1923, while the above appeal was pending in this court, Sam D. Rose was appointed to succeed F. M. Ford as local guardian of said minor's estate, the latter having resigned several days prior thereto. Shortly thereafter, on May 9, 1923, Rose filed in the county court his petition for authority to lend one Cox the sum of $7,500 out of the guardianship funds turned over to him by Ford and to accept as security therefor Cox's personal note and a mortgage covering certain improved real estate in the city of Muskogee. After notice of hearing had been given and the real estate and improvements in question had been appraised, all in conformity with prior orders of the court, said petition was heard on May 14, 1923, and the court thereupon approved and authorized the proposed loan. Accordingly, said loan was completed the following day. An analysis of these proceedings is unnecessary, because appellant admits the regularity thereof, provided the court had jurisdiction to approve and authorize the loan at the time.

On July 21, 1923, Rose, apparently attempting to comply with the above mandate, forwarded certain notes, mortgages, bonds, abstracts and insurance policies, including the Cox note and mortgage, to the National Bank of Washington, at Washington, D. C., which bank, following instructions, delivered the same to Mason on July 26, 1923, and took his receipt therefor. After some differences between Mason and Rose concerning the latter's administration of said minor's estate in Oklahoma, Rose, on March 18, 1924, resigned as local guardian and simultaneously filed his final report and account, listing the Cox loan therein. On April 14, 1924, this report and account was regularly approved by the county court, and Rose and the surety on his bond were finally discharged.

Although Mason first voiced some objection to the Cox loan approximately two months after receiving the note and mortgage evidencing the same, he proceeded to collect interest thereunder, and on June 1, 1926, in an action theretofore instituted by him as guardian, procured a judgment on said note and foreclosed the lien of said mortgage. At the foreclosure sale held on January 3, 1927, he purchased the property in said minor's behalf for $2,000, there being no other bidders, and thereafter made an unsuccessful attempt to collect the deficiency under said judgment by means of general execution. Some time later, the exact date being undisclosed, the apartment house located on said property was condemned and torn down by order of the municipal authorities of the city of Muskogee. This presumably happened after October 22, 1928, because on that date Mason expended $1,332.80 of said minor's funds for house repairs.

According to Mason's ledger sheet with reference to the loan, which takes into account the principal investment, interest maturing prior to the judgment in foreclosure, taxes, insurance and all other expenses, the minor suffered a loss of $11,837.89 from May 14, 1923, to February 19, 1930. However, the loss so disclosed does not take into account the actual value of the property at the time of the foreclosure sale or thereafter, and the record before us contains no evidence of such value other than the amount of Mason's aforesaid bid, which of itself is of little probative force.

In view of our decision herein, the above facts relating to Mason's experience with the loan and his handling of the property are material only in so far as they explain the basis for the litigation giving rise to this appeal.

Such litigation began on December 10, 1933, when Mason, as next friend of the minor, instituted in the district court of Muskogee county an action against Rose and

United States Fidelity & Guaranty Company, the latter being the surety on Rose's aforesaid bond, for the recovery of $7,500, with interest from May 14, 1923, as alleged loss and damage sustained by said minor in consequence of the Cox loan. Plaintiff apparently intended to repudiate the loan entirely. After the issues had been fully joined, the case proceeded to trial on December 29, 1934, and judgment was rendered in favor of both defendants on the same date. Plaintiff's motion for new trial was filed and overruled two days later. Thereupon this appeal was perfected.

The first proposition presented by appellant is that the county court had no jurisdiction to approve and authorize the Cox loan while there was pending in this court an appeal from the proceedings involving the transfer of the minor's personal property from Oklahoma to the District of Columbia, and that Rose therefore had no authority to make the loan. Let us consider that proposition.

Section 1493, O. S. 1931 (sec. 1489, C. O. S. 1921), relating to orders directing the transfer of personalty from local to foreign guardians, provides as follows:

"Such order is a discharge of the * * * local guardian * * * in whose possession the property may be at the time the order is made, on filing with the county court the receipt therefor of the foreign guardian of such absent ward." (Emphasis ours.)

It is clearly the intention of the above section that the local guardian shall be deprived of custody and control of the property embraced in the order directing the transfer and shall be relieved of further responsibility therefor only if and when he has delivered the same to the foreign guardian and has taken and filed the latter's receipt therefor (Kersey v. McDougal, 79 Okla. 53, 191 P. 594). The mere entry of the order itself cannot effect the contemplated discharge, irrespective of whether such order is entered by the county court in the first instance or pursuant to directions from the district court or this court on appeal. The local guardian necessarily retains custody and control of such property and remains liable therefor until the actual delivery thereof has been completed. The fact that he might become civilly liable or be guilty of contempt, should he violate the order directing the transfer, does not alter the situation. Any other construction of the statute would do violence to the provisions above emphasized. All language to

the contrary in Bank of Ingersoll v. Dresia, 103 Okla. 166, 229 P. 567, is hereby expressly disapproved.

When the statute is properly applied to the facts in the instant case, it follows that, pending the outcome of Mason's appeal involving the transfer of the minor's personal property, Rose retained custody and control of such property at all times subsequent to his appointment as local guardian and that such custody and control continued until he actually delivered the property to Mason. It is not incumbent upon us to determine herein to what general extent Rose's power over the property may have been curtailed during the pendency of the appeal. Suffice it to say, he possessed sufficient power to do that which the county court had jurisdiction to authorize him to do.

In Stetler v. Boling, 52 Okla. 214, 220, 152 P. 452, we held:

"While an appeal is pending in this court, the trial court is without jurisdiction to make any order involving any question covered by the appeal; but matters independent of and distinct from the questions involved in the appeal, and which are purely collateral or supplemental, lying outside of the issues framed in the case appealed, or arising subsequent to the delivery of the judgment from which the appeal is prosecuted, are not taken from the jurisdiction of the trial court by appeal."

Application of this general rule is not altogether free from difficulty, especially since the question presented herein apparently is one of first impression in this state.

In other states where similar problems have received consideration it seems to be the general consensus of opinion that, pending an appeal involving the ultimate disposition of funds or other property, such as here, the trial court retains jurisdiction to make any order contemplating the preservation of such funds or property. See 3 Corpus Juris, p. 1268, sec. 1385; Westinghouse Electric Mfg. Co. v. Barre & Montpelier T. & P. Co. (Vt.) 123 Atl. 201; Gotthelf v. Fickett (Ariz.) 294 P. 837; Goddard v. Ordway, 4 Otto (94 U. S.) 672; Spring v. Insurance Co., 6 Wheat. (19 U. S.) 519; Hinson v. Adrain, 91 N. C. 372. In the last two cases mentioned the rule was expressly applied to the investment of funds during the pendency of an appeal.

Thus, in Hinson v. Adrian, supra, it was held:

"A fund raised by sale under decree is not transferred to this court by appeal from

a judgment directing its distribution, and hence no application to make a disposition of it by investment, pending the appeal, will be entertained here.

"The appeal arrests all proceedings in the court below upon the judgment appealed from, but does not withdraw from it the authority to order that proper security be given for the safekeeping or investment of the fund, pending the appeal."

The rule so announced being salutary, no reason can be conceived why it should not be applied here. We therefore hold that the county court had jurisdiction to approve and authorize the Cox loan, and that Rose had ample authority to make it. No attempt was made to place the funds invested beyond the reach of the mandate later issued by this court, and the order authorizing the loan did not have such effect. It was merely contemplated that the funds be invested in other personalty. The fact that the investment later may have proved to be of diminished value does not affect the question of abstract power or jurisdiction. In view of the record before us, it must be presumed that the county court acted regularly and in good faith (Anderson v. Malone, 154 Okla.. 4, 6 P. (2d) 795).

The conclusion just reached practically disposes of appellant's second and third propositions, wherein he contends that Rose was guilty of constructive fraud and mismanagement in making the Cox loan. In advancing these propositions he candidly states that he "charges no moral fraud" and that "he assumes that the county court had no jurisdiction to make the order authorizing the investment." While he relies on section 9418, O. S. 1931 (sec. 4997, C. O. S. 1921), defining constructive fraud, he cites no cases and has produced no evidence tending to establish Rose's liability under the provisions of that section, except such as were relied upon by him in connection with his first proposition. That being true, appellant's contentions in this respect are conclusively answered by our opinion in Anderson v. Malone, supra, wherein, quoting with approval from the earlier case of McDougal v. Kersey, 108 Okla. 231, 236 P. 7, we held:

"If a guardian obtains a valid order from the county court to make a specific investment, then he and his bondsmen are protected against the result of such investment."

In his fourth and final proposition, appellant contends that Rose and his bondsman, the defendants below, failed to produce sufficient evidence to avoid liability. Without determining upon whom the burden of proof rested in the trial court, we conclude that appellant's position in this respect is wholly untenable.

Besides showing Mason's aforesaid experience with the Cox loan and property, appellant introduced evidence to the effect that at the time of the loan the assessed valuation of said property was only $2,900. Of course, that did not tend to establish its actual value. See Ft. Collins D. R. Co. v. France (Colo.) 92 P. 953; Hamilton v. Seaboard A. L. R. Co. (N. C.) 63 S. E. 730; St. L., I. M. & S. R. Co. v. Magness (Ark.) 123 S. W. 786; Storrs v. Robinson (Conn) 51 Atl. 135. Appellees thereupon produced proof establishing that the proceedings approving and authorizing the loan were entirely regular (which appellant admitted during the trial and again admits here): that before the loan was made the proposed security therefor was appraised to be of the actual value of $17,000; that Rose, having personally inspected such security and being wholly familiar therewith, believed it to be worth said appraised value; and that he acted in good faith in making the loan. This was amply sufficient to controvert all inferences properly deducible from appellant's evidence. At most, there existed merely a conflict in the evidence, which conflict was resolved against appellant. We are not at liberty to disturb the trial court's findings to that effect. The authorities supporting this conclusion are so numerous that citation thereof is unnecessary.

In view of the foregoing, it is not incumbent upon us to consider the affirmative defenses raised by appellees in the trial court and presented for our determination herein. The anticipated complexity of the many vexing problems that may arise from similar litigation in the future prompts us to confine this opinion to the specific issues determined.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys John H. Vossbrink, A. E. Pearson, and H. L. Stuart in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Vossbrink and approved by Mr. Pearson and Mr. Stuart, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

OSBORN, V. C. J., and RILEY, BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur. McNEILL, C. J., and WELCH, J. absent.